Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

June 22, 2020

**2020 CO 62**

**No. 20SA136,** *In re Title, Ballot Title & Submission Clause for 2019–2020 #293 —*
**Clear Title Requirement — Single Subject Requirement — Ballot Titles.**

In this case, the supreme court reviews the actions of the Title Board in

setting the title and the ballot title and submission clause for Initiative 2019–2020

#293 ("Initiative #293").  Initiative #293 proposes to add section 22 to article X of

the Colorado Constitution and to amend certain statutory provisions in Titles 24

and 39 of the Colorado Revised Statutes in order to create a new preschool

program.  The measure implements the new preschool program, in part, by

(1) redirecting certain state cigarette and tobacco tax revenue away from local

governments that ban selling tobacco or nicotine products and to the new

preschool program and (2) reallocating a portion of the cigarette and tobacco taxes

collected under article X, section 21 of the Colorado Constitution that are currently

allocated to several health-related programs.

The court concludes that the title that the Title Board set for Initiative #293

presents a single subject, namely, the creation and administration of a Colorado

preschool program funded by reallocating existing taxes on, and other revenues derived from, tobacco and nicotine products. The court further concludes that the title satisfies the clear title requirement because it describes Initiative #293's central features succinctly, accurately, and fairly and in a manner that will not mislead voters. Accordingly, the court affirms the Title Board's actions in setting the title for Initiative #293.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

---

**2020 CO 62**

---

**Supreme Court Case No. 20SA136**
*Original Proceeding Pursuant to § 1-40-107(2), C.R.S. (2019)*
Appeal from the Ballot Title Setting Board

---

In the Matter of the Title, Ballot Title and Submission Clause for 2019-2020 #293

**Petitioner:**

Anna Jo Haynes,

v.

**Respondents:**

Monica Vondruska and Jon Caldara,

**Title Board:**

Theresa Conley, David Powell, and Julie Pelegrin.

---

**Title Board Action Affirmed**
*en banc*
June 22, 2020

---

**Attorneys for Petitioner:**
Recht Kornfeld, P.C.
Mark G. Grueskin
    *Denver, Colorado*

**Attorneys for Respondents:**
Ireland Stapleton Pryor & Pascoe, PC
Benjamin J. Larson
William A. Hobbs
     *Denver, Colorado*

**Attorneys for Title Board:**
Philip J. Weiser, Attorney General
Grant T. Sullivan, Assistant Solicitor General
     *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.
**JUSTICE HART** dissents, and **JUSTICE HOOD** joins in the dissent.

¶1     This case is a companion case to *In re Title, Ballot Title & Submission Clause for 2019–2020 #315*, 2020 CO 61, __ P.3d __, which we are also deciding today and which involves the same parties as are before us here.  In this case, we review the actions of the Title Board in setting the title and the ballot title and submission clause for Initiative 2019–2020 #293 ("Initiative #293").  Initiative #293, like Initiative #315, proposes to add section 22 to article X of the Colorado Constitution and to amend certain statutory provisions in Titles 24 and 39 of the Colorado Revised Statutes in order to create a new preschool program.  The measure implements the new preschool program, in part, by (1) redirecting certain state cigarette and tobacco tax revenue away from local governments that ban selling tobacco or nicotine products and to the new preschool program and (2) reallocating a portion of the cigarette and tobacco taxes collected under article X, section 21 of the Colorado Constitution that are currently allocated to several health-related programs.[1] Initiative #315 differs from Initiative #293 to the extent that Initiative #315 also adds a ten percent sales tax on tobacco-derived nicotine vapor products.

---

[1] The text, title, and ballot title and submission clause for Initiative #293 are attached as an appendix to this opinion.

3

¶2      We conclude that the title that the Title Board set for Initiative #293 presents a single subject, namely, the creation and administration of a Colorado preschool program funded by reallocating existing taxes on, and other revenues derived from, tobacco and nicotine products.  We further conclude that the title satisfies the clear title requirement because it describes Initiative #293's central features succinctly, accurately, and fairly and in a manner that will not mislead voters. Accordingly, we affirm the Title Board's actions in setting the title for Initiative #293.

## I.  Facts and Procedural Background

¶3      Pursuant to section 1-40-106, C.R.S. (2019), proponents-respondents Monica Vondruska and Jon Caldara submitted proposed Initiative #293 to the Title Board for the setting of a title and submission clause.  The Board conducted an initial public hearing and proceeded to set the following title:

> Shall there be an amendment to the Colorado constitution and a change to the Colorado Revised Statues concerning a new preschool program that is funded by reallocating revenue generated by existing state taxes on tobacco and nicotine products, and, in connection therewith, requiring the state to create and administer the new preschool program, which must supplement existing preschool programs and funding, and reallocating from certain health-related programs and other state purposes portions of the following existing revenue sources: 1) taxes on tobacco and nicotine products; and 2) money the state receives from tobacco litigation settlements?

¶4      Petitioner Anna Jo Haynes then filed a motion for rehearing, asserting that the title did not satisfy either the single subject or clear title requirement.  The

4

Board conducted a rehearing and denied petitioner's motion for rehearing in its entirety.

¶5 Petitioner now petitions for review pursuant to section 1-40-107(2), C.R.S. (2019).

## II. Analysis

¶6 In this case, petitioner contends that (1) Initiative #293 violates the single subject requirement by both expanding preschool programs and penalizing local policy makers who ban any form of tobacco or nicotine products and (2) the title set by the Title Board violates the clear title requirement because it is silent about the penalty created for local jurisdictions that ban the sale of any tobacco or nicotine product and fails to inform voters about major cuts to programs from existing funds. In *In re 2019–2020 #315*, ¶¶ 10–28, 31–33, which we also decide today, we addressed each of these arguments at length and rejected them. For the reasons discussed in depth in that case, we likewise reject petitioner's contentions here.

## III. Conclusion

¶7 Because (1) Initiative #293 effectuates one general objective or purpose, does not treat incongruous subjects in the same measure, comprises subject matter that is necessarily and properly connected, contains nothing surreptitious or hidden, and presents no risk of surprise or fraud on voters and (2) the title set by

5

the Title Board clearly, succinctly, and accurately describes Initiative #293's central features in a manner easily understandable to voters, we conclude that the Board has satisfied both the single subject and clear title requirements of the Colorado Constitution.

¶8 Accordingly, we affirm the Board's actions in setting the title for Initiative #293.

**JUSTICE HART** dissents, and **JUSTICE HOOD** joins in the dissent.

*Be it enacted by the People of the State of Colorado:*

**SECTION 1**. In the Constitution of the State of Colorado **add** section 22 to article X as follows:

SECTION 22. REVENUES FROM EXISTING TOBACCO TAXES TO FUND A COLORADO PRESCHOOL PROGRAM. (1) THE PEOPLE OF THE STATE OF COLORADO FIND AND DECLARE THAT SINCE 2005 THERE HAVE BEEN SIGNIFICANT IMPROVEMENTS IN THE REGULATION OF THE SALE AND USE OF CIGARETTES AND TOBACCO PRODUCTS WITH THE ADOPTION OF COMPREHENSIVE SMOKE-FREE POLICIES BY STATE AND LOCAL GOVERNMENTS, THE PASSAGE OF THE FEDERAL "FAMILY SMOKING PREVENTION AND TOBACCO CONTROL ACT" IN 2009 AND ADOPTION OF 2019 AMENDMENTS TO THE FEDERAL "FOOD, DRUG AND COSMETIC ACT" TO RAISE THE MINIMUM AGE OF THE SALE OF TOBACCO AND NICOTINE PRODUCTS FROM 18 YEARS OF AGE TO 21 YEARS OF AGE.

(2) THE PEOPLE FIND AND DECLARE THAT THE UNITED STATES SURGEON GENERAL HAS STATED THAT TOBACCO SMOKING IN THE UNITED STATES IS NOW AT AN ALL-TIME LOW. THE COLORADO TOBACCO EDUCATION, PREVENTION, AND CESSATION GRANT PROGRAM REVIEW COMMITTEE HAS MADE SIMILAR FINDINGS OF REDUCED TOBACCO USAGE BY COLORADANS.

(3) FINALLY, THE PEOPLE OF THE STATE OF COLORADO FIND AND DECLARE THAT EXISTING REVENUES FROM THE CIGARETTE AND TOBACCO TAXES IMPOSED BY SECTION 21 OF THIS ARTICLE X IN 2005 SHOULD BE REDISTRIBUTED TO CONTINUE TO FUND TOBACCO EDUCATION, CESSATION AND PREVENTION PROGRAMS WHERE NEEDED AND TO CONTINUE TO FUND HEALTH EDUCATION, RESEARCH AND TREATMENT PROGRAMS, BUT TO ALSO FUND A NEW PRESCHOOL PROGRAM FOR THE CHILDREN OF COLORADO AS SET FORTH HEREIN WITH NO NEW TAXES.

(4) NOTWITHSTANDING ANY OTHER PROVISION OF LAW, THE GENERAL ASSEMBLY SHALL ENACT AUTHORIZING LEGISLATION NO LATER THAN DECEMBER 31, 2021, TO ENABLE THE DEPARTMENT OF EDUCATION, OR SUCH OTHER DEPARTMENT OR DELEGATED ENTITY THAT IS DETERMINED BY THE GENERAL ASSEMBLY TO BE BEST QUALIFIED, TO CREATE AND ADMINISTER, USING EXISTING REVENUES, A NEW COLORADO PRESCHOOL PROGRAM IN A MANNER THAT FOSTERS THE PROGRAM'S ADMINISTRATION, CONSISTENT WITH VOTER INTENT. THE LEGISLATION SHALL CREATE THE PRESCHOOL CASH FUND IN THE STATE TREASURY. EVERY YEAR, BEGINNING WITH THE 2021-2022 FISCAL YEAR, THE SUM OF ONE HUNDRED MILLION DOLLARS FROM

EXISTING TAX REVENUES COLLECTED PURSUANT TO SECTION 21, ARTICLE X MUST BE CREDITED TO THE PRESCHOOL CASH FUND, EXCEPT THAT THE PERCENTAGE OF SIXTEEN PERCENT OF REVENUES SHALL REMAIN APPROPRIATED FOR SCHOOL AND COMMUNITY BASED AND STATEWIDE TOBACCO PROGRAMS DESIGNED TO REDUCE INITIATION OF TOBACCO USE BY CHILDREN AND USE, PROMOTE CESSATION OF TOBACCO USE AMONG YOUTH AND ADULTS AND REDUCE EXPOSURE TO SECOND HAND SMOKE. SUCH REVENUES SHALL CONTINUE TO BE APPROPRIATED THROUGH THE "TOBACCO EDUCATION, PREVENTION AND CESSATION ACT" PART 8 OF ARTICLE 3.5 OF TITLE 25, COLORADO REVISED STATUTES, AND ANY SUCCESSOR ACT. NO LATER THAN DECEMBER 31, 2021, THE GENERAL ASSEMBLY SHALL ENACT LEGISLATION TO REALLOCATE THE PERCENTAGES SET FORTH IN SECTION 21 OF THIS ARTICLE X FOR THE PURPOSES SET FORTH THEREIN AND IN THIS SECTION 22. THE PRESCHOOL CASH FUND SHALL BE SUBJECT TO ANNUAL APPROPRIATION BY THE GENERAL ASSEMBLY SOLELY FOR THE DIRECT AND INDIRECT COSTS OF THE NEW COLORADO PRESCHOOL PROGRAM. THE NEW COLORADO PRESCHOOL PROGRAM AND ITS FUNDING AS PROVIDED BY THIS SUBSECTION (4) MUST SUPPLEMENT AND NOT SUPPLANT ANY EXISTING PROGRAMS AND FUNDING RELATING TO PRESCHOOL EDUCATION.

(5) ANY AUTHORIZING LEGISLATION FOR THE PRESCHOOL PROGRAM SHALL INCLUDE A MANDATE THAT, TO THE EXTENT PRACTICABLE, THE FUNDS BE USED TO FOSTER:

(I) PROGRAMMATIC ADMINISTRATION THAT ALLOWS FOR PARENT CHOICE, ENSURES SCHOOL-BASED AND COMMUNITY-BASED PROGRAMS THAT MEET QUALITY AND PROGRAM STANDARDS ARE ABLE TO PARTICIPATE, PRIORITIZES COMMUNITY NEEDS IN A MANNER THAT WILL SUPPORT AND STRENGTHEN THE DIVERSITY OF BIRTH TO KINDERGARTEN SERVICE PROVIDERS, AND HELPS TO ACHIEVE STATE AND LOCAL MIXED DELIVERY GOALS;

(II) HIGH-QUALITY PROGRAMMING THAT HELPS PREPARE CHILDREN FOR KINDERGARTEN;

(III) COORDINATION WITH EXISTING EARLY CHILDHOOD SYSTEMS AND INITIATIVES AND ADVANCING ALIGNMENT WITH KINDERGARTEN THROUGH TWELFTH GRADE SYSTEMS TO SUPPORT CHILDREN'S TRANSITIONS TO SCHOOL;

(IV) OPPORTUNITIES FOR EVIDENCE-BASED PARENT, FAMILY, AND COMMUNITY ENGAGEMENT; AND

(V) AN EVALUATION OF EARLY CHILDHOOD EDUCATION PROGRAM EFFECTIVENESS, INCLUDING THE IMPACT OF PRESCHOOL ON CHILD AND FAMILY OUTCOMES.

**SECTION 2.** In Colorado Revised Statutes, **amend** subsection (1.7) of section 24-75-1104.5 as follows:

(1.7) NOTWITHSTANDING ANY OTHER PROVISION OF LAW, THE PEOPLE OF THE STATE OF COLORADO FIND AND DECLARE THAT, FOR FISCAL YEARS BEGINNING ON OR AFTER JULY 1, 2022, THE SETTLEMENT MONEYS RECEIVED BY THE STATE IN THE PRECEDING FISCAL YEAR SHALL BE ALLOCATED AS FOLLOWS. Except as otherwise provided in subsections (1.3) and (5) of this section, and except that disputed payments received by the state in the 2015-16 fiscal year or in any year thereafter are excluded from the calculation of allocations under this subsection (1.7), for the 2016-17 fiscal year and for each fiscal year thereafter, the following programs, services, and funds shall receive the following specified percentages of the total amount of settlement moneys received by the state in the preceding fiscal year:

(a) The Colorado nurse home visitor program created in article 6.4 of title 26, C.R.S., shall receive twenty-six and seven-tenths percent of the settlement moneys;

(b)(a) The children's basic health plan trust created in section 25.5-8-105, C.R.S., shall receive eighteen percent of the settlement moneys;

(c)(b) The University of Colorado Health Sciences Center shall receive a base amount of fifteen and one-half percent of the settlement moneys and an additional amount of two percent of the settlement moneys, and the state treasurer shall credit both THE amounts to the tobacco litigation settlement moneys health education fund, which is hereby created in the state treasury. The state treasurer shall credit all interest and income derived from the deposit and investment of money in the fund to the fund. Any unexpended and unencumbered money in the fund at the end of any fiscal year remains in the fund and shall not be credited or transferred to the general fund or any other fund. All money in the fund is subject to annual appropriation by the general assembly to the health sciences center, but the health sciences center shall use the additional amount of settlement moneys credited to the fund only for tobacco-related in-state cancer research as authorized in section 24-75-1103 (7).

(d) The Fitzsimons trust fund created in section 23-20-136 (3), C.R.S., shall receive eight percent of the settlement moneys. Subject to annual appropriation by the general assembly, the settlement moneys shall be used as specified in section 23-20-136 (5), C.R.S.

(e) The Tony Grampsas youth services program created in article 6.8 of title 26, C.R.S., shall receive seven and one-half percent of the total amount of settlement moneys, which the state treasurer shall transfer to the youth services program fund created in section 26-6.8-102 (2) (d), C.R.S.;

(f) The drug assistance program created in section 25-4-1401, C.R.S., shall receive five percent of the settlement moneys;

(g) The AIDS and HIV prevention fund created in section 25-4-1405, C.R.S., shall receive three and one-half percent of the settlement moneys;

(h) The supplemental tobacco litigation settlement moneys account of the Colorado immunization fund created in section 25-4-2301, C.R.S., shall receive two and one- half percent of the settlement moneys;

(i)(c) The tobacco settlement defense account of the tobacco litigation settlement cash fund created in section 24-22-115 (2) (a) shall receive two and one-half percent of the settlement moneys;

(j) The supplemental state contribution fund created in section 24-50-609 (5) shall receive two and three-tenths percent of the settlement moneys, which, subject to annual appropriation by the general assembly, shall be used to pay the costs of increased nonsupplemental state contributions and to provide supplements to the state contribution for state employee group benefit plans for each eligible state employee as required by section 24-50-609.5;

(k) The Colorado autism treatment fund created pursuant to section 25.5-6-805, C.R.S., shall receive two percent of the settlement moneys to pay a portion of the state's share of the annual funding required by the "Home- and Community-based Services for Children with Autism Act", part 8 of article 6 of title 25.5, C.R.S.;

(l)(d) The Colorado state veterans trust fund created in section 28-5-709, C.R.S., shall receive one percent of the settlement moneys; AND

(m) The state dental loan repayment program created in article 23 of title 25, C.R.S., shall receive one percent of the settlement moneys; and

(n)The Colorado health service corps fund created in section 25-1.5-506, C.R.S., shall receive one percent of the settlement moneys.

(e)  THE PRESCHOOL CASH FUND REFERENCED IN SECTION 22, ARTICLE X, OF THE COLORADO CONSTITUTION, AND CREATED BY IMPLEMENTING LEGISLATION, SHALL RECEIVE THE REMAINING PERCENTAGE OF THE SETTLEMENT MONEYS.

**SECTION 3.**  In Colorado Revised Statutes, 39-22-623, **amend** (1)(a)(II)(A) as follows**:**

(1) The proceeds of all money collected under this article 22, less the reserve retained for refunds, shall be credited as follows:

(a)
(I) Repealed.

(a)(II)(A) Effective July 1, 1987, an amount equal to twenty-seven percent of the gross state cigarette tax shall be apportioned to incorporated cities and incorporated towns that levy taxes and adopt formal budgets and to counties. For the purposes of this section, a city and county is considered a city. The city or town share shall be apportioned according to the percentage of state sales tax revenues collected by the department of revenue in an incorporated city or town as compared to the total state sales tax collections that may be allocated to all political subdivisions in the state; the county share shall be the same as that which the percentage of state sales tax revenues collected in the unincorporated area of the county bears to total state sales tax revenues that may be allocated to all political subdivisions in the state. The department of revenue shall certify to the state treasurer, at least annually, the percentage for allocation to each city, town, and county, and the department shall apply the percentage for allocation certified in all distributions to cities, towns, and counties until changed by certification to the state treasurer. In order to qualify for distributions of state income tax money, units of local government are prohibited from imposing taxes on any person as a condition for engaging in the business of selling cigarettes, OR ENACTING BANS OF

11

TOBACCO AND NICOTINE PRODUCTS IN ANY FORM. For purposes of this subsection (1)(a)(II), the "gross state cigarette tax" means the total tax before the discount provided for in section 39-28-104 (1). For any city, town, or county that was previously disqualified from the apportionment set forth in this subsection (1)(a)(II)(A) by reason of imposing a fee or license related to the sale of cigarettes, the city, town, or county is eligible for any allocation of money that is based on an apportionment made on or after July 1, 2019, but not for an allocation of money that is based on an apportionment made before July 1, 2019. THE TOTAL AMOUNT THAT WOULD HAVE BEEN ALLOCATED TO CITIES, TOWNS AND COUNTIES IN EACH FISCAL YEAR BUT FOR THE ADOPTION OF A BAN ON OR AFTER DECEMBER 31, 2021, SHALL BE CERTIFIED TO THE STATE TREASURER BY THE DEPARTMENT OF REVENUE AND SHALL BE CREDITED TO THE PRESCHOOL CASH FUND REFERENCED IN SECTION 22, ARTICLE X, OF THE COLORADO CONSTITUTION.

SECTION 4. In Colorado Revised Statutes, 39-26-123, **add** (1)(c) and (3)(c) as follows:

(1)  As used in this section, unless the context otherwise requires:

(c) "TOBACCO AND NICOTINE PRODUCTS" DOES NOT INCLUDE ACCESSORIES SUCH AS ROLLING PAPERS, PIPES, AND VAPE PENS.

(3) For any state fiscal year commencing on or after July 1, 2013, the state treasurer shall credit eighty-five percent of all net revenue collected under this article 26 to the old age pension fund created in section 1 of article XXIV of the state constitution. The state treasurer shall credit to the general fund the remaining fifteen percent of the net revenue, less:

(c) ONE HUNDRED PERCENT OF ALL AVAILABLE NET REVENUE ATTRIBUTABLE TO RETAIL SALES OR USE OF TOBACCO AND NICOTINE PRODUCTS ON OR AFTER JANUARY 1, 2022, WHICH THE STATE TREASURER SHALL CREDIT TO THE PRESCHOOL CASH FUND CREATED PURSUANT TO SECTION 22, ARTICLE X OF THE COLORADO CONSTITUTION.

SECTION 5. In Colorado Revised Statutes, **amend** section 39-28-110(1) as follows:

**(1)  Distribution of Tax Collected.**  All sums of money received and collected in payment of the tax imposed by the provisions of this article, except license fees received under section 39-28-102 and the moneys collected pursuant to section 39-

28-103.5, shall be transmitted to the state treasurer who shall distribute money as follows: Fifteen percent to the general fund, and eighty-five percent to the old age pension fund, EXCEPT THAT, ON AND AFTER JULY 1, 2021, THE STATE TREASURER SHALL CREDIT FIFTEEN PERCENT TO THE PRESCHOOL CASH FUND REFERENCED IN SECTION 22, ARTICLE X, OF THE STATE CONSTITUTION INSTEAD OF THE GENERAL FUND.

**SECTION 6.** In Colorado Revised Statutes, **amend** section 39-28.5-108 (1) as follows:

(1) **Distribution of Tax Collected**. All sums of money received and collected in payment of the tax imposed by the provisions of this article, except license fees under section 39-28.5-104 and the moneys collected pursuant to 39-28.5-102.5, shall be transmitted to the state treasurer, who shall distribute such money as follows: Fifteen percent to the general fund and eight-five [sic.] percent to the old age pension fund. ON OR AFTER JULY 1, 2021, THE STATE TREASURER SHALL CREDIT EIGHTY-FIVE PERCENT OF ALL NET REVENUE THAT IS COLLECTED UNDER THIS ARTICLE 28.5 TO THE OLD AGE PENSION FUND CREATED IN SECTION 1 OF ARTICLE XXIV OF THE STATE CONSTITUTION. THE STATE TREASURER SHALL CREDIT THE REMAINING FIFTEEN PERCENT OF THE REVENUE TO THE PRESCHOOL CASH FUND REFERENCED IN SECTION 22, ARTICLE X, OF THE STATE CONSTITUTION.

**SECTION 7.** THIS INITIATIVE SHALL BE EFFECTIVE UPON PROCLAMATION BY THE GOVERNOR.

13

# Ballot Title Setting Board

## Proposed Initiative 2019-2020 #293

The title as designated and fixed by the [Title] Board is as follows:

> An amendment to the Colorado constitution and a change to the Colorado Revised Statues concerning a new preschool program that is funded by reallocating revenue generated by existing state taxes on tobacco and nicotine products, and, in connection therewith, requiring the state to create and administer the new preschool program, which must supplement existing preschool programs and funding, and reallocating from certain health-related programs and other state purposes portions of the following existing revenue sources: 1) taxes on tobacco and nicotine products; and 2) money the state receives from tobacco litigation settlements.

The ballot title and submission clause as designated and fixed by the [Title] Board is as follows:

> Shall there be an amendment to the Colorado constitution and a change to the Colorado Revised Statues concerning a new preschool program that is funded by reallocating revenue generated by existing state taxes on tobacco and nicotine products, and, in connection therewith, requiring the state to create and administer the new preschool program, which must supplement existing preschool programs and funding, and reallocating from certain health-related programs and other state purposes portions of the following existing revenue sources: 1) taxes on tobacco and nicotine products; and 2) money the state receives from tobacco litigation settlements?

JUSTICE HART, dissenting.

¶9     This case is a companion to *In re Title, Ballot Title & Submission Clause for 2019–2020 #315*, 2020 CO 61, __ P.3d __.  I dissented in that companion case because the Title Board set a title that is insufficient, unfair, and misleading.  *See In re Title, Ballot Title & Submission Clause for 2019–2020 #315*, 2020 CO 61, __ P.3d __ (Hart, J., dissenting).  Because the majority now affirms the Title Board's action to set title for Initiative #293 for substantially the same reasons it offered in *In re 2019–2020 #315*, I again respectfully dissent.

I am authorized to state that JUSTICE HOOD joins in this dissent.